UNITED STATES DISTRICT COURT

For the Western District of Wisconsin

File No.: 07-C-0190-C

---

Bruce Severance,

       Plaintiff,

vs.

Michael Wilson and Signature Transport, Inc.,
  An Illinois Corporation

       Defendants.

---

**Affidavit of Steven E. Antolak Opposing Defendant's Motion to Continue Trial and Supporting Request for Payment of Copying Expenses**

---

| | |
|---|---|
| STATE OF MINNESOTA | ) |
| | ) ss |
| COUNTY OF HENNEPIN | ) |

Steven E. Antolak, having been first duly sworn on oath, states:

1. I am the attorney for Plaintiff in the above-entitled matter and I make this affidavit of my own personal knowledge.

2. Defendants seek a continuance of trial from the assigned date of January 2, 2008, giving the impression that Plaintiff has obstructed discovery or otherwise acted to delay disclosure of documents. Plaintiff denies Plaintiff opposes any continuance of the above-entitled matter.

### Background

3. This matter arose from the parties organizing, operating, and then dissolving BTS Transportation, LLC., (BTS) once a Wisconsin limited liability company. Severance

1

alleges that Wilson arranged to buy out Severance's interest in BTS for $250,000 less any adjustments to value established by the company's accountants, Anderson Hager and Moe, P.C. of Spooner, WI. However, Wilson never engaged the accountants to perform the accounting. In fact, Wilson caused BTS to dissolve without paying the outstanding invoices due the accountants for services rendered prior to dissolution.

4. In 2007, Anderson Hager and Moe, P.C. sued Severance, the only member of BTS who was a Wisconsin resident, alleging he was personally liable for the unpaid bills charged to BTS. Considering the cost of defense in relation to the amount in dispute and the fact that Severance might need the benefit of accounting work that was performed for BTS in the instant suit, Severance settled the claim with the accountants. Severance agreed to make payments of $500.00 per month against BTS's debt in exchange for access to the files. This agreement is the basis for Defendants' allegation that Severance did not pay monies due the accountants.

## Severance commences the instant suit

5. After commencement of the instant suit, as counsel for Severance, I made a timely disclosure of all documents in Severance's possession that related to the operations of BTS or otherwise contained information relevant to the parties' pleadings. I disclosed the titles of the many folders into which the documents were organized and as kept in the ordinary course of business. I also disclosed that the total volume of documents was approximately two "bankers boxes." (See letter dated July 16, 2007 and attached hereto as Exhibit A.).

6. When I did not receive Defendant's disclosures, I contacted opposing counsel not only to discuss the disclosures, but how we might exchange documents. We agreed that each would produce the copies to a third-party vendor and each of us would pay the copying charges for the documents we received from the other. I also disclosed that the

accountants had sued Severance for the unpaid bills due from BTS and observed that that if we could reach an accommodation, perhaps our clients could save some considerable expense in accomplishing the accounting. Defense Counsel suggested our clients split the accounting bill and I agreed (subject to approval by our clients). (See confirmatory letter dated July 28, 2007 and attached hereto as Exhibit B).

7. By letter dated August 22, 2007, I confirmed shipment of two boxes of documents to Defense Counsel and forwarded a billing for copying charges. (See letter dated August 22, 2007 and attached hereto as Exhibit C.

8. Subsequently, Defense Counsel contacted me asking if my client would consider continuing our trial date of January 2, 2007. I had occasion to discuss the engagement of the accountants and I indicated that my client was willing to share the costs. Defense Counsel indicated that his client would be communicating directly with the accountants and would be working out payment arrangements directly with the accounting firm and not through me.

9. By September 21, 2007, I had not heard more from Defense Counsel and I had not received payment for the copying charges. I submitted another billing. I asked whether counsel preferred to exchange checks for payment of the costs or should I offset his charges against my bill. I also asked about his progress in working with the accountants. (See letter dated September 21, 2007 and attached hereto as Exhibit

10. Throughout late summer and fall, I had occasion to speak with the accountant and their accounts receivable person. My understanding is that even though Defendants forwarded their documentation to the accountants, they made no arrangement for payment of the accountant.

11. Further, I understand that the accountant has already entered substantially all of the data from my client (prior to commencement of the lawsuit) and did not require

additional documentation from my client. However, the accountants would not undertake any additional work until their prior billings to BTS were paid. Defendants made no attempt to work out payment.

12. Further, Defense Counsel has failed and refused to pay the billings for copying documents delivered to him, alleging that there was much repetition, perhaps as much as 25% of all the documents produced by the copying vendor being duplicates. Defense Counsel has paid nothing towards the copying expense.

13. I reviewed the documents copied by Night Owl copying service and I find Defense Counsel's allegations to be without merit. The files were duplicated in the same order/condition as kept by Plaintiff. To the extent multiple copies of some documents might have been filed in more than one folder, there probably was minimal duplication of perhaps tens of documents, but not thousands as alleged by Defense Counsel. Further,

14. In conclusion, Defense Counsel has had possession of all the documents relating to BTS from Plaintiff from the time of disclosure last summer. Assuming that Defendants' disclosures were as complete as Plaintiff' all parties had the same full set of documents. Each party was free to engage whatever expert or accountant it chose anytime without regard to the other.

15. The accountants had all the information required of Severance to proceed with completing the accounting. It was not accomplished in advance of trial only because Defendants refused to pay their share as agreed. The court may still order Defendants to pay for an accounting as part of the relief to be granted to Severance at trial.

16. It is bizarre that Defendants, having taken control of BTS and failing to pay the accountants, claim prejudice because Severance did not pay a debt he did not owe. It is bizarre that Severance, demanding an accounting of Defendants' management of BTS would be required would pay for the accounting himself, for the benefit of the

Defendants and in aid of their allegations at trial.

17. The actions of the Defendants have been solely for the purpose of harassing Severance, causing him undue expense and attempting to delay him justice. The motion to continue the trial should be denied. Further, Defense Counsel and Defendants should be required to immediately pay the copy charges of $2074.86. FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Steven E. Antolak

Subscribed to and Sworn to before me
This 7th day of December, 2007

_____
Notary Public



SCOTT M RHODES
Notary Public
Minnesota
My Commission Expires Jan. 31, 2011

# STEVEN E. ANTOLAK
## ATTORNEY AT LAW

P.O. Box 43664
Brooklyn Park, MN 55443-0664
Telephone: (763) 493-5631
Facsimile: (763) 493-2766
Email: steven.antolak@antolak.com

July 16, 2007

Mr. Kevin G. Keane
Host & Keane, S.C.
405 North Calhoun Road
Suite 201
Brookfield, WI 53005-5902

      RE: Severance v. Wilson et al.
        Case No. 07-C-0190-C

Dear Mr. Keane:

  Enclosed and served upon you via U.S. Mail please find Plaintiff's disclosures made pursuant to Fed. R. Civ. Proc. 26.

  How would you like to handle disclosure of the files? I estimate that have two bankers boxes of documents. Would you like to inspect them before copying? Otherwise, I can have a third party copying service copy and forward them to you directly. You would have to arrange billing.

  I would like an idea of the volume of paperwork you have on hand before I decide to simply copy everything. I can use a third-party service or pay a billing from your office.

        Sincerely,

        ANTOLAK LAW OFFICE

        Steven E. Antolak

*Providing legal advice and advocacy for your personal and professional needs
and for businesses, their owners and families.*

Exhibit A

# STEVEN E. ANTOLAK
## ATTORNEY AT LAW

---

P.O. Box 43664
Brooklyn Park, MN 55443-0664
Telephone: (763) 493-5631
Facsimile: (763) 493-2766
Email: steven.antolak@antolak.com



July 28, 2007

Mr. Kevin G. Keane
Host & Keane, S.C.
405 North Calhoun Road
Suite 201
Brookfield, WI 53005-5902

        RE: Severance v. Wilson et al.
             Case No. 07-C-0190-C

Dear Mr. Keane:

    I am following up to our recent telephone discussion regarding our Rule 26 disclosures. I have already forwarded my disclosures to you. I assume that you have them in hand.

    I asked about your disclosures, particularly the calculation of damages and list of persons having knowledge relevant to the claims and defenses. You had indicated that your client had the information and that upon his return from a short trip, you would obtain those disclosures and forward them to me.

    I also asked about documents relating to an offering of an investment opportunity relating to the trucking business activities of our clients. I understood that your client made some sort of presentation to group of potential investors. I would like a copy of the offering prospectus, private placement memorandum or whatever offering/disclosure documents were prepared and/or distributed. You indicated you had no personal knowledge of such activities, but that you would inquire of your client when he returned from his trip.

    We discussed the exchange of documents. We agreed that each of us would produce the documents to a third party copying service to copy all such documents and ship the copies to each other. Each of us would pay the copying charges of the documents we received from the other. I indicated I have about two banker's boxes of loose documents. You indicated you have about one box of documents for disclosure.

*Providing legal advice and advocacy for your personal and professional needs
and for businesses, their owners and families.*

**Exhibit B**

It occurred to me that it would be as easy for the copying company to simply image the documents and forward a CD-ROM (or other media) to you. If you would prefer your disclosures in that format, please let me know in the next day or so.

We also discussed the need for complete financial documents reporting the business activities of the business in order to have meaningful settlement discussions. You suggested our client split the accounting bill from Anderson Hager and Moe and have that firm complete the work. I explained that the accounting firm had sued my client personally for the outstanding bills and that we reached an accommodation whereby my client pays down the balance monthly and the firm will permit me access to the documents in their possession. I will follow up with the accounting firm to determine how we might engage them to complete the work and bill our clients personally, subject to any claims in the pending law suit.

When we closed our conversation, you mentioned that the accounting firm will probably need some of the financial and billing documents that are a part of my Rule 26 disclosures to you and that I could forward those documents to the accountant. I am not clear on whether you want those documents disclose to you as well, or if I should only provide you the documents that are not being sent to the accountants. If I do not hear otherwise from you, I will send you copies of everything I have.

Please let me know if I have misstated any part of our conversation. Also let me as soon as possible if you would rather have digital images of the documents rather than the documents themselves.

I look forward to receiving your Rule 26 disclosures promptly.

Sincerely,

ANTOLAK LAW OFFICE

Steven E. Antolak

# STEVEN E. ANTOLAK
## ATTORNEY AT LAW

P.O. Box 43664
Brooklyn Park, MN 55443-0664
Telephone: (763) 493-5631
Facsimile: (763) 493-2766
Email: steven.antolak@antolak.com

August 22, 2007

Mr. Kevin G. Keane
Host & Keane, S.C.
405 North Calhoun Road
Suite 201
Brookfield, WI 53005-5902

RE: Severance v. Wilson et al.
Case No. 07-C-0190-C

Dear Mr. Keane:

Enclosed please find copies of the enclosure letters for two boxes of documents disclosed pursuant to our Rule 26 disclosures previously served upon you. Box 1 contains documents 000000 through 003843. Box 2 contains documents 003844 through 007762.

Billing and tracking numbers are on the receipts attached to the letters.

I also enclose a billing for the copying services. A total of 7,762 pages were copied. Documents copied through a document feeder (6658) were billed at $.18 per copy. Documents that were stapled, two sided or that required separate handling were billed at $22 per copy. The cost of actual printing (blowback) is $.04 per copy and the cost of numbering the documents was $.02 per copy.

In lieu of a second blowback for my files, I took the files on CD master. That $20.00 charge is not chargeable to your client.

I enclose a billing from my firm. I ask that payment be made payable to my firm.

Sincerely,

ANTOLAK LAW OFFICE

Steven E. Antolak



*Providing legal advice and advocacy for your personal and professional needs
and for businesses, their owners and families.*



Exhibit C

```
                4617 Marigold Avenue
                  P.O. BOX 43664
              Brooklyn Park, MN 55443-0664

                   (763) 493-5631
           email: steven.antolak@antolak.com
```

**COPY**

```
VIN G. KEANE                                       Page:  1
EANE,S.C.                                        08/22/07
  CALHOUN RD.                           Account No: 21289-000M
                                        Statement No:    22148
LD  WI  53005-5902
```

```
LING


OPYING
OWL COPYING SERVICE                                 2,033.86
                                                   --------
Expenses                                            2,033.86

Current Fees and Expenses                           2,033.86


e Due                                              $2,033.86
                                                   ========
```

PAYMENTS RECEIVED PRIOR TO THE STATEMENT
DATE ARE REFLECTED ON THIS STATEMENT. ANY
PAYMENTS RECEIVED AFTER THE STATEMENT DATE
WILL BE REFLECTED ON YOUR NEXT STATEMENT

# STEVEN E. ANTOLAK
*ATTORNEY AT LAW*

P.O. Box 43664
Brooklyn Park, MN 55443-0664
Telephone: (763) 493-5631
Facsimile: (763) 493-2766
Email: steven.antolak@antolak.com

September 21, 2007

Mr. Kevin G. Keane
Host & Keane, S.C.
405 North Calhoun Road
Suite 201
Brookfield, WI 53005-5902

      RE: Severance v. Wilson et al.
         Case No. 07-C-0190-C

Dear Mr. Keane:

  Enclosed please another billing for copying and shipment of Mr. Severence's disclosures to you. If you wish me to simply credit this bill with the amounts due your firm for the materials you disclosed to me, let me know. If you would rather, we can exchange checks to accommodate any bookkeeping requirements. Please note that it is my practice to charge business corporations (including professional corporations) a finance charge of 1.5% of the outstanding balance per month.

  I have forwarded your letter regarding changing the trial date to my client for his consideration.

I had understood that you were going to negotiate the fee for accounting services from Anderson Hager and Moe, PC. In connection with this litigation. Can you please advise me of the status of your discussions?

           Sincerely,

           ANTOLAK LAW OFFICE

           Steven E. Antolak

*Providing legal advice and advocacy for your personal and professional needs
and for businesses, their owners and families.*


Exhibit D

COPY

# ANTOLAK LAW OFFICE

4617 Marigold Avenue
P.O. BOX 43664
Brooklyn Park, MN 55443-0664

(763) 493-5631
email: steven.antolak@antolak.com

```
/IN G. KEANE                                          Page: 1
EANE,S.C.                                           09/21/07
  CALHOUN RD.                       Account No: 21289-000M
                                    Statement No:    22161
LD   WI    53005-5902
```

```
LING


GE-FORWARD DISCLOSURE DOCUMENTS                        41.00
                                                       -----
 Expenses                                              41.00


 Current Fees and Expenses                             41.00


ous Balance                                         2,033.86
```